20-2958 from the Northern District of Iowa, United States v. William Meyer The court will hear from Ms. Quick. Good morning, may it please the court. The warrantless entry in search of Mr. Meyer's home violated his Fourth Amendment rights. The government cannot meet its burden to establish that the exigent circumstances exception to the warrant requirement applies. Alternatively, if exigent circumstances were present, the officers created that exigency through their conduct. All evidence obtained must be suppressed as fruit of the poisonous tree. Under the facts and circumstances of this case, the good-faith exception does not apply. First, the government failed to establish that exigency was present, specifically the imminent destruction of Generalized concerns that an individual will destroy evidence is not enough to justify a warrantless entry into a home. Ms. Quick, tell me why I thought that was the point of Kentucky v. King, the United States Supreme Court decision is, if they have a belief that drug evidence is about to be destroyed, that is the definition of an exigency. So tell me what I'm not getting in your argument. They have to have something to support that belief. As the case law requires, a lot of times what you see is you hear rustling, seems like  circumstances are present in Kentucky v. King. So what I'm getting at is that there is a possibility that an individual will destroy evidence. Now, every time an officer goes and does a knock and talk, and by doing so potentially tips off an individual that they are under some kind of investigation, automatically there isn't exigency because of the possibility that an individual will destroy evidence in this case. But that's not required, is it? Here you have a voluntary or an interview, and during those times he kept saying, well, I don't want you to see it now, maybe I'll bring it into you. Or, I've got some emails, my house is a mess, etc. But there seem to be quite a few statements indicating that there is no way he wanted them to see this laptop or this computer until he had a chance to do other things first. And that might lead a reasonable person to think that he might do the equivalent of flushing the evidence down the toilet. Your Honor, those statements are simply a refusal of consent, and what he's doing is doing it in a more polite way. I mean, instead of saying no and get off my property, he's saying, well, I just got comfortable with it, I don't feel right having you come in, get a search warrant because then it will say what you can and cannot look at, and it will define what can be looked at. That cannot be used against him to somehow say he's going to destroy evidence, because all he is doing in those circumstances is what he has the right to do, which is refuse consent to search. Again, Kentucky v. King says you've got to stand on your constitutional rights. Correct? I'm quoting them. You have to stand on your constitutional rights, then your right, it does do away with any kind of consent, but here he didn't invoke any constitutional rights. He gave these other excuses. Is that what we're talking about in the information level that the courts focus on here? I don't believe so. I don't think there necessarily has to be an outright invocation of a constitutional right. I think what's happening here is when you look at the Ramirez case, you know, not agreeing to something that an individual has the right to not agree to can't be then used to establish exigency. He did a little more than that, didn't he? He said not so much go get a warrant. He said, well, maybe later. You can come back later. Doesn't that lead one to believe that he might destroy it in the interim? No, Your Honor. I think what that goes to is just a politer way of saying no, I don't want you to search it right now. He's not slamming the door in the officer's face like the defendant in Ramirez, but all he is stating is I am not comfortable with consenting to a search right now. I think it's also important to say this is a situation where officers wanted to take his electronic devices from him. So it wasn't that they just wanted to kind of go in and necessarily peruse and see one computer and they knew exactly what computer they wanted to look at. They wanted to take his devices and process them. And in today's age being without a computer or cell phone, it's a much bigger deal than saying can I just come in and look at your house really quick, which is not the circumstances we have here. So I think those statements need to be considered in the context of what law enforcement was actually asking Mr. Meyer to do. The government also on this point points to, well, the fact that he was tipped off, there is more. The more that the government points to is, well, they had arguably stronger evidence that Mr. Meyer had committed these offenses. That does not go to whether the destruction of evidence was imminent. It might strengthen their probable cause argument, but the fact that they really thought Mr. Meyer was engaged in illegal activity does not by itself establish that the Next I'll want to turn and spend some time on if there were exigent circumstances in this case that the law enforcement officers created that exigency with their conduct during this knock and talk. The idea from Kentucky v. King is that we're not going to punish law enforcement officers and exclude evidence when they're doing no more than what another person on the street could do. Law enforcement can choose this strategy that they chose here of going to a person's home, knocking, asking some questions, and seeing if the person will cooperate with them. Again, I'm back to Kentucky v. King. Does it require conduct that engages or threatened to engages in conduct that violates the Fourth Amendment? Must it really be that bad? It uses that language, Your Honor, and I think that when you look at the sources that we've cited in our case that's discussing this language in Kentucky v. King, implied threats, you know, the conduct must be considered in context, right? I don't think it's required that these agents needed to come up and say, you know, I'm going to search your house without a warrant. I'm going to do whatever I want. It needs to be looked at in the context of the entire conversation, whether there was this conduct that crossed the line into potential violation of the Fourth Amendment. And here it did. Here in the interview, the agent stated, you know, when he stated I wanted to go back in because it was messy or just to check my files, the agent stated that wasn't going to be a possibility, quote, if he gave him that opportunity, end quote, he would go in and smash it with a hammer. They told Mr. Meyer that they cannot let him go back into his house because if so, that he's just going to destroy evidence. They told him they would show up when they wanted to to search. They repeatedly brought up and Mr. Meyer did not that they thought he was going to destroy evidence, talked about potential federal charges and warned him that things could never be deleted off a computer. But didn't those those improper statements to identify? I just want to get the timeline here because my understanding is it came after the statements that Judge Gardner and I have been referencing. So for example, where he says you can come back later. Don't want to do it now. My house is messy. I want to check my email first, etc. All of that came later. And so the exigency existed, I think, before any of those any of those later issues. So the initial based off of my timeline, the initial refusal was I use these devices all of the time. And then they say they're not comfortable. And then he offers to bring them in at a different time because he uses these devices all the time. And that's when kind of the tone of the interview, I would say, becomes a these agents where they start talking about destruction of evidence and where they start saying he's going to light them on fire and they're not comfortable and they're not going to let him go in the house without them being present. So there is, you know, I would disagree that there's exigency at that point, but there is an initial refusal based off of I don't want you taking my devices. And that's when the tone of the conversation changes at that point. So all of those other statements identified came later. They came after some of the what you refer to as the inappropriate comments of the officers. Yes. So according to my notes, about 30 minutes in on that tape is when they start talking about, you know, smashing it with a hammer and lighting on fire. 30 minutes in is when they start referencing the destruction of evidence. But I also think going to the continued discussion of Kentucky versus King, there's a very important footnote in that decision. And in that decision, the court notes it didn't have to decide that day. But if there's a circumstance where an agent states a search is going to happen and tells an individual that a search is going to happen, the Supreme Court thought it was highly likely that an officer couldn't rely on exigent circumstances for a warrantless search. And that's exactly what happened here. He was repeatedly told, you know, we want you to consent. It was clear they wanted him to consent. But if you don't consent, we're going to get a warrant. We're going to search. This is how the search is going to happen. We're going to come in with you. You're not going in without us. So since Kentucky versus King, as the parties agree, is the most important case on this issue, this conduct by the agents in Mr. Meyer's case violates exactly what Kentucky versus King was concerned about and crosses the line into an officer-created exigency. What about the Stephen case? I thought you were going to get to the Stephen case, recent decision of this court, the USB drive case. Yes. Isn't that awful close to this case? I would disagree, Your Honor. And the government cites Stephen, and there are several cases like that that the government cites too for the proposition of exigency. Those cases are evidence that law enforcement had seized lawfully. More often than not, it's the third party that found what they believe is illegal material on a device and gives it to law enforcement. Law enforcement then obtains a search warrant to actually search the devices. That's not what happened here. And what the magistrate court was very clear to state, the challenge conduct here is the entry and search of Mr. Meyer's home without a warrant. It would be a different case if, say, Mr. Meyer's family members had brought the devices into law enforcement and said, hey, I saw something that you guys should see on here. But that's not what law enforcement did. Here, and especially considering the Supreme Court's recent decision on the community caretaking exception, courts should be very, very careful to allow warrantless searches into the home because, as courts have stated, entry into the home is the chief evil that the Fourth Amendment is intended to protect. So I think those cases are distinguishable for a variety of reasons. And also, they don't really address the question of what is exigency. It's just a matter of, is it reasonable for officers to hold onto a device while they get a search warrant? I want to discuss briefly the question of the good faith exception. Note that the premise of the good faith exception is based on the idea that the exclusionary rule, the main purpose of it, is to deter police misconduct. And when an officer goes and gets a search warrant, he or she is doing exactly what they're supposed to do. So if a judge grants a search warrant when one should not have been granted, there's no real police misconduct to deter. That's not what we have in this case. Here there is police misconduct. The entry and search of Mr. Meyer's home in violation of his Fourth Amendment rights. The government does cite to select cases out of the circuit that have held, well, if it's reasonable, even if an individual's constitutional rights are violated, if it's reasonable, we're not going to exclude the evidence and applies a good faith type analysis to officer misconduct. Our initial argument is that those cases are distinguishable and don't apply on the facts of this case. Alternatively, if the good faith exception could be expanded based off of those cases to Mr. Meyer's conduct, we assert those should be overruled. The main argument is at least the Sixth Circuit has refused to apply good faith when there is an officer-created exigency. And that's, of course, our argument for reasons stated today that that's what occurred. Also, even for good faith to apply, the officer's conduct must be reasonable. Here the conduct was not reasonable. The officers were the only one to bring up destruction of evidence. The officers made it clear that the search was going to happen and that it was going to happen according to their terms. The only concern of destruction of evidence was brought up by law enforcement. Mr. Meyer's conduct did not do anything to indicate to the officers that destruction of evidence was imminent. For those reasons, unless there are further questions, I would reserve the remainder of my time for rebuttal. Very well. Thank you, Ms. Quick. Mr. Tremel? May it please the Court, Counsel, Mark Tremel, Assistant United States Attorney in Cedar Rapids, Iowa. After reviewing the materials yesterday, I wanted to clarify when the defendant made statements during his interview. We listed a number of statements on pages 8 through 11 of our brief. All of them were made before entry into the house, with the exception of one statement, the one that his most recent communications with the Cruz family were within the last week. That's near the bottom of page 8 of the brief. That statement was made after the entry, and I would reference page 5 and pages 74 and 75 of the suppression hearing transcript on that. That statement made after the entry, that would go to probable cause for the search warrant, but that would not go to the probable cause in exigent circumstances for the initial search on July 3rd. Statements that were made before the entry included the defendant's relationship with the Cruz family, the fact that he knew them, including the minor with the initial I, that he traveled to the Philippines three times, stayed with that family. He communicated with the people who he was supporting, sometimes daily, every day, sometimes not for a couple of weeks. That was at about 8 minutes and 10 seconds into the interview, and then later in the interview at about 15 minutes in, he said the Cruz family, they're the people that I contact, that I'm in contact with mostly. Those quotes are all before the discussion about consent begins. Other statements that the defendant made in the interview, that was inconsistent with information the FBI already had. His claim that I, the minor, was 19, his claim that he didn't use PayPal to send money other than for online purchases, his claim that the money he sent to the Philippines was only for charitable purposes, and his discussion about his email address where he said it ended with a T instead of an R, or had the letter T because he hit the wrong key on his cell phone. That was, again, all earlier, that was before the discussion of consent. His discussion of hiding aspects of his communications from his wife, about how she wasn't aware of some of the money transfers, didn't participate in his Skype communications. That was before the discussion, and he also talked about his use of Skype as well, before any of the discussion of the consent began. The main focus on the exigency issue in the district court was whether this was an officer-created exigency. We argue in our brief, and we maintain that the court has not shown good cause for his argument that there are no exigent circumstances here. He didn't argue that in his motions to press. He did not argue that at the hearing. At the hearing, he talked about no probable cause, and law enforcement created exigency, and also in his objections to the report and recommendation, he didn't dispute that there was exigency. He was talking about whether it was officer-created. However, when we get to the merits, if the court reaches the merits of were there exigent circumstances, we cited the cases the Stephen, Clutter, and the Goodale cases. And those cases support the seizure of electronic devices to prevent the destruction of data with a search warrant to follow for a forensic examination. Now, it's correct, those cases do not involve entry into a residence. We cited Leveringston, which was entry, I believe, into a hotel room. Kentucky v. King obviously anticipates an entry as something included under exigent circumstance. We would argue that the exigency here was greater than the exigencies in Stephen, Goodale, and Clutter because here, the defendant was going back into his residence. He told officers he wasn't going to wait outside. He was going back into his residence, and when he was in there, then he would have had the opportunity to destroy evidence. Counsel argues that, you know, in the brief that Ramirez through Ramirez's case is on point here, this was not a mere refusal of consent. Here, the defendant, there were other factors that led to exigent circumstance. Defendant admitted that he had communications with the Cruz family. He admitted he had a close relationship with them, and when you have a close relationship, there's going to be more of a chance there's communications on your devices. He knew officers were investigating that, and after the knock and talk, he was well aware that they were looking for child pornography. He was well aware. He told them that he used a computer and a cell phone and Skype in his communications, and so all of these facts, which he was now aware, not only that agents were investigating, but that he had given them information on, that all gave him knowledge, which would have given him a reason to go and destroy evidence, and as the court points out, his excuses about how he needed to check the email, his house was a mess, that all plays into the issue of exigent circumstances, because had officers actually gone and gotten a warrant, the evidence may have been destroyed by then. What about the, what's the timeline? You heard me ask the opposing counsel. I want to know what the timeline is in terms of when the officers started saying things like, I want to hit that with a hammer and things like that, and whether or not some of these statements about the house being messy and wanting to check its email came before or after that. Alright, thank you, Your Honor. The statement about hitting with a hammer, that was at approximately that was at approximately, that's quoted on page 10 and 11 of my brief, between 29 minutes and 55 seconds and 30 minutes and 45 seconds. That was after the defendant asked if they could schedule a time when they could look at the computer later, and the hitting with a hammer, that discussion was in response to that, that if I let you do that, if I let people do that and schedule a time later, they could destroy evidence. So that's what that was responsive to, but yes, that was around 30 minutes or so into the interview, Your Honor. There's also the statement about... It's 28 minutes, right, when they first clearly ask for consent? Does that take until 28 minutes, or is there an asking for asking for consent? I have at about 28 minutes and 35 seconds, according to my brief. And you think not before then? I don't see that before then, Your Honor. Thank you. That's the discussion of the consent, and then once the discussion of the consent starts, then the discussion goes on about, well, can we do it at a later time? And then some of these other issues come up about that are disputed here. I'm trying to figure out, you know, when the exigency exactly arose, and that's what, you know, did it happen before all of these statements that supposedly are improper? Did they happen after? I guess what's the United States, what's the government's position on that? Your Honor, our position is that the exigency arose before, that the admissions the defendant made that he was communicating, that he was close to these people, that he had these devices. The exigency arose before. Now, granted, once the discussion of consent starts, and there's a back and forth about terms of consent, there's continued discussion. So the exigency was there, and additional information came in that both gave additional probable cause, and it also added to the exigency. The whole thing about a search is that they initially mentioned a search warrant, but then later on, when it looked like things were going to wind up and there was going to be no consent, then the defendant circled back and asked about a search warrant and asked about setting an appointment, and then in response to that, that's when Special Agent Maxted said basically that a search was going to happen on their terms if they were doing a search warrant. So it wasn't a statement of, we're just going to come into your house and get stuff. They were trying to negotiate a consent, but officers were not willing to negotiate a consent where they would let the defendant go alone into his house and then they would come back later. Well, counsel, at what point in the government's view does the defendant have to choose to stand on his constitutional rights? You know what I'm saying. If you do that, if you do that, then you can't go in the house, right? Your Honor, if there are no exigent circumstances and probable cause at the time he does that, then you can't go in the house, and our position is that there was probable cause here after his admissions, there were exigent circumstances after his admission, and so when he first said, I don't want you going in the house or said he was not going to consent, there were already probable causes and exigent circumstances at that time. Our argument is not that his refusal to let officers in, that that is what creates the exigent circumstance. Our argument is that all of these statements he made in addition, both added to probable cause and added to exigent circumstances. So they've got to say it as he approaches, as the officers approach before they say anything? Is that when you think they have to invoke constitutional rights? Your Honor, I, in terms of when he has to invoke, I guess I haven't considered at what point the defendant, I haven't considered this analysis in terms of did the defendant have to invoke at a certain point? I guess my consideration was were there exigent circumstances and probable cause based on his statements? Not a mere refusal of consent, but based on all of the statements that he made. So I know that doesn't exactly answer the court's question. I'm not sure when I haven't gone through back to look at what time was this a flat no of a consent. It was more of a discussion back and forth trying to negotiate different ways and his not wanting to go along with that. The court had referenced Kentucky v. King about an actual threat and violation of the Fourth Amendment. As argued, we don't believe there was any threat and violation of the Fourth Amendment. But also, even if this court found that the statements were a violation, the agents did not gain entry to the House by these statements. They didn't get entry into the House based on the statement for example, we're not telling you when you're coming. That's not what caused them to gain entry. And so that's, that would not satisfy that prong of Kentucky v. King. Let me give you my concern in upholding this search. Wouldn't we essentially be blowing up the warrant requirement in the Constitution? In the sense that wouldn't we be endorsing a strategy that says if you've got probable cause, you don't need to go get a warrant. Just knock on the door, tell them they're under investigation. You've just created exigent circumstances. You can now go in without a warrant. Your Honor, and I think that's the concern that King addresses is that you can't just announce that we have an investigation without anything more and then saying our announcement that there's an investigation therefore creates an exigent circumstance. There has to be probable cause. In this case there was some probable cause beforehand, but there was a concern of staleness and they got additional information when they arrived and when they got additional information, that certainly freshened up the probable cause and it also gave them additional exigent circumstances. So I think the slippery slope concern that there would be, that's not the case here. Here, this isn't like the case the defense sites, I believe it was Ramirez, where there's nothing additional. There are additional things here and I think if you look at the, in each case, at what the exigent circumstances are, then you don't have that slippery slope concern. Here, head officers had freshened up. They would have been able to get a search warrant. They didn't and so they took what was a permissible step, which was to do a knock and talk. Had they not gained any additional information, they would have been out of luck. But since they gained additional information, both going towards probable cause and exigent circumstances, then that's what allowed them to search here. Let me add to Judge Grunder's issue, which is, it's not only the knock and talk, which obviously we've said is a valid investigative technique, but then using the interview to bait the defendant or to provoke the suspect, he's not a defendant yet, provoke the suspect into saying things that would create an exigency. Conducting the interview in such a way that, oh, now we got to go in because he's acting very suspicious about this evidence. Your Honor, is there anything specific that the court is concerned about that is a baiting tactic? Well, just some of the statements that opposing counsels talked about. That's why I asked so much about the timing. I wanted to be sure. If you say, for example, I'm going to come in and get your computer and your iPad and all your electronic devices, whether you like it or not, at a time of my choosing, so you might as well do it now because at least you can control it. Well, maybe then the guy says, well, I don't really want you coming now because you already kind of threatened to come do whatever you want to do to my devices. You know what I mean? And so you could at least argue that that could create an exigency. Your Honor, and I don't see that as what was occurring here, but I see what was occurring here where officers were very concerned that if they left, he was going to destroy things. And Special Agent McVeigh, in particular, was trying to remind him, knowing that they may not be able to do a search that day, that you shouldn't. It's a violation of law to destroy things, and you shouldn't go in there. You shouldn't destroy these things. And that people sometimes think about doing it, and that's why consent under your terms doesn't work. I saw that as an effort to prevent the defendant from destroying things, not as an effort to try to bait him into doing anything, Your Honor. Well, I have one more question with Judge Grudger's indulgence, which is, isn't there a better way here to freeze the scene? And by freeze the scene, I mean, you can get warrants very quickly now. A lot of judges have iPads and things like that, and it takes time, but you can get one in 20 minutes, half an hour sometimes. Wouldn't the better thing have been to hold him so that he couldn't destroy the evidence and get a warrant? Well, Your Honor, that's a good question. That's one thing that's addressed in the Goodale and Clutter line of cases is as secure as, do you need to get a search warrant first, or do you secure? Here, the problem was, they offered him, agents offered him, can you stay outside here while I go talk to someone? And he said, no, I'm going back into the house. And so in order to freeze the scene, they would have had to grab him. And so they're in a position physically of, do we restrain a guy by grabbing him before we get a search warrant or not? And so that's one thing that absolutely added to exigency in this case, but it also made the freezing the scene difficult, Your Honor. Your Honor, I see I'm out of time, and I would ask for the court to affirm the district court. Thank you. Thank you, Mr. Trummel. Ms. Quick, your rebuttal. Your Honor, the question of exigency and whether the destruction of evidence is imminent focuses on the conduct of Mr. Meyer and what he may or may not have done to illustrate that it was imminent. Nothing about Mr. Meyer's conduct, in our view, establishes that the destruction of evidence was imminent. That their case might be stronger after statements he made, which, according to his statements, he wasn't admitting to anything illegal. He was discussing his church activities. That does not go to the imminent destruction of evidence. That Texas case that we cited was a case where the officers went up to the door and smelled marijuana, and still the appellate court said no, sure, that goes to probable cause that someone is committing an offense, but unless there's something as part of these circumstances that indicates that this person is destroying the drugs or destroying the marijuana, you don't get exigent circumstances. And those are the factors that are here. If I may, I wanted to alert the court to a case that has a similar issue to the sentencing issue. Obviously the sentencing issue is a little bit more fact intensive, but I did raise a similar issue in United States versus Paul Gensley. That's case number 20-2487. A little different, but I wanted to err on the side of alerting the court. It's a similar type of argument. If there are no further questions, we would ask this court to reverse and remand for the reasons stated today in our brief. Very well, thank you counsel. We appreciate your appearance today. Case is submitted and we will issue an opinion in due course. Thank you. Thank you, your honor.